### MILLER & SAYERS, GARNISHEES V. STATE OF TEXAS.

Decided January 4, 1905.

**Garnishment—Same as Indemnity.**

Where it appears from telegrams and letters that a sum of money sent to garnishees by a manufacturing concern located in another state was merely for the purpose of indemnifying them against any loss or damage which they might incur by reason of furnishing security in an appeal of an agent of such company who had been convicted of unlawfully selling goods of the company in this state, such sum was not subject to garnishment by the state to pay off the judgment upon its affirmance by the Court of Appeals.

Appeal from the County Court of Gonzales. Tried below before Hon. W. W. Glass.

*T. F. Harwood* and *C. C. Walsh,* for appellant.

*Robert F. Nixon* and *Cobbs & Hildebrand,* for appellee.—Where a principal sends money to his agent with instructions to turn the money over to a third party, or for the benefit of a third party, the agent thereby becomes the debtor of the third party, and the third party may sue and recover of said agent, and need not prove anything but that the money was turned over to the agent for the benefit of the plaintiff. Beach v. Fick, 62 N. W. Rep., 753; Floyd v. Patterson, 72 Texas, 202; Spann v. Cochran, 63 Texas, 240; Lawrence v. Fox, 20 N. Y., 268; Lehow v. Simonton, 3 Cal., 346; Bassell v. Highes, 53 Wis., 319; Wood v. Mority, 15 R. I., 518; Huffcutt on Agency, 1st ed., art. 205; Keene v. Sage, 75 Me., 138; Beach v. Fick (Iowa), 62 N. W. Rep., 753; Crudington v. Hogan, 58 S. W. Rep., 642; Smith v. M. & P. Bank, 40 S. W. Rep., 1038; Darlington M. & L. Co. v. Surety Co., 9 Texas Ct. Rep., 739.

JAMES, CHIEF JUSTICE.—The nature of the case will appear from the following facts:

The following communications took place between Miller & Sayers and the Boatmen's Bank of St. Louis:

TELEGRAM NO. 1.

"From Boatmen's Bank to Miller & Sayers.
"St. Louis, Mo., August 27, 1902.
"Miller & Sayers, Gonzales.

"J. W. Hannon being tried today your County Court. In case of conviction, pending appeal to Supreme Court, one thousand dollar bond may be required; we understand you are willing to furnish same, and Boatmen's Bank hereby guarantees protection to you against loss or damage which you may thereby suffer.

"Wm. H. Thompson, Cas."

TELEGRAM NO. 2.

"From Miller & Sayers to Boatmen's Bank.
"Gonzales, Texas, August 28, 1902.
"Boatmen's Bank, St. Louis.

"Bond required in Hannon case fifteen hundred dollars. Confirm telegram for this amount.       Miller & Sayers."

TELEGRAM NO. 3.

"From Boatmen's Bank to Miller & Sayers.
"St. Louis, Mo., August 28, 1902.
"Miller & Sayers, Gonzales, Texas.

"Referring to your today's telegram in reply to ours of yesterday, we hereby request fifteen hundred dollar bond under same guarantee.

"Wm. H. Thompson, Cas."

LETTER NO. 1.

"From Miller & Sayers to Boatmen's Bank.
"Gonzales, Texas, April 18, 1903.
"Boatmen's Bank, St. Louis, Mo.

"Gentlemen:—Acting under your telegraphic advices bearing date August 27 and 28, 1902, in which you indemnify us and hold us harmless in entering into a recognizance bond in the case of J. W. Hannon v. The State of Texas, on appeal from the County Court of Gonzales County, Texas, in the sum of fifteen hundred ($1,500) dollars, we beg to inform you that on the fourteenth day of this month the Court of Criminal Appeals decided this case adversely to J. W. Hannon, and he is liable for the amount of his fine, together with the costs as shown by the statement hereto attached. We presume that you made this bond and sent the message under instructions from the Wrought Iron Range Co. You will therefore please confer with them, and direct that draft be forwarded immediately to Harwood & Walsh, who represented J. W. Hannon in the trial court and on appeal, to cover the amount of the judgment, interest and costs, in order that a forfeiture may be prevented. Yours very truly,       Miller & Sayers."

LETTER NO. 2.

"From Boatmen's Bank to Miller & Sayers.

"April 20, 1903.

"Messrs. Miller & Sayers, Gonzales, Texas.

"Gentlemen:—Yours of the 18th inst. at hand this morning, with statement mentioned, covering judgment and costs in the matter of suit against J. W. Hannon, in which litigation you were good enough, at our request, to give bond in the sum of $1,500, we acting in the premises for our friends, the Wrought Iron Range Co. of this city.

"Herewith, I return said statement, together with our check for the amount $696.92 (our No. B. 69680, on Bank of America, N. Y.). Please apply same in settlement of this claim, and return the account to us receipted.

"We are requested by the Wrought Iron Range Company to ask, that *in paying this bill you will have it understood that payment is made under protest, with the reservation of all legal rights in the matter. If this feature can not be included in the signing of the receipt, please make this protest and for legal rights in the presence of some party who, if necessary, can be a witness thereto.* We certainly, gentlemen, are very much obliged to you for your kindness in this matter, and we would be glad to remit to cover your charge or any outlay you have made in this transaction. Very sincerely yours,

"W. H. Thompson, Cash."

LETTER NO. 3.

"From the Wrought Iron Range Co. to the Boatmen's Bank.

St. Louis, Mo., May 15, 1903.

"Boatmen's Bank, City.

"Gentlemen:—Acting under the advice of our attorneys, we have decided to contest the forfeiture of the bond in the J. W. Hannon case at Gonzales, Texas, in which at our request you indemnified Miller & Sayers to the amount of $1,500 and costs. You will remember that you recently remitted Miller & Sayers on account of this bond a draft for $696.92. This amount is still on deposit with them, and they, acting upon our instructions, will refuse to pay it over to the county officials until our legal rights in the premises have been determined. *Please notify Miller & Sayers at once, that you will continue to protect them for the full amount of the original bond for any judgment and costs which they may suffer therefrom in the future.* . . .

"Yours truly,

"Wrought Iron Range Co.

W. L. Culver, V. P.

LETTER NO. 4.

"From the Wrought Iron Range Co. to Boatmen's Bank.

"St. Louis, Mo., May 21, 1903.

"Boatmen's Bank, City.

"Gentlemen:—Please send Miller & Sayers, Gonzales, Texas, draft

for $1,000. In making this remittance please explain to Miller & Sayers that this remittance, together with a former remittance of $696.92, is to protect them from any loss they may sustain in the future by reason of their arranging bond in the J. W. Hannon case, the forfeiture of which is being contested by us for J. W. Hannon; and that in case we win the case and defeat the forfeiture of the original bond, the total amount of $1,696.92 is to be returned to us or to you for our account. Yours truly,        Wrought Iron Range Co.
        "B. B. Culver, Secretary."

LETTER NO. 5.

"From Boatmen's Bank to Miller & Sayers.
        "St. Louis, Mo., May 21, 1903.
"Messrs. Miller & Sayers, Gonzales, Texas.

"Gentlemen:—We have your letter of the 18th, in reference to the bond which in ours of the 15th, you were asked to make in the J. W. Hannon case, account the Wrought Iron Range Company of St. Louis. On receipt of your said letter we at once submitted the same to the Wrought Iron Range Co. and received from them a letter, copy of which we herewith enclose. We received from them also check for $1,000, for which amount we enclose herewith our draft No. B 72374, on Bank of America, N. Y., your favor, to be used in accordance with your present letter. Our cashier instructs me to say to you that he thinks you are quite right in this requirement, and he cheerfully complies We ask these favors of our friends with reluctance; it appears, however, to have become generally customary for our city banks to accommodate their depositors in the matter of bonds, and we can not well avoid it. We thank you for this additional trouble which you are thus subjected to. I remain, yours very truly,
        "Jules Deslege, Asst. Cas."

The evidence was that the $696.92 was placed by Miller & Sayers on their books to the credit of the Boatmen's Bank. Afterwards when a suit was brought on the recognizance, J. D. Sayers and W. J. Bright, who were the sureties on Hannon's recognizance bond, these persons requested of the Boatmen's Bank the further sum of $1,000 which was forwarded and likewise placed to the credit of the Boatmen's Bank. The $696.92 was received April 20, 1903, and the $1,000 on May 21, 1903. This aggregate sum was thus in Miller & Sayers' hands on August 1, 1903, when the state garnisheed them on the judgment against Hannon.

The testimony by deposition of F. T. Neal, traveling auditor of the Wrought Iron Range Company, was in substance that upon the conviction in Gonzales County of Hannon, a salesman in the employ of the Wrought Iron Range Co., that last named company procured the Boatmen's Bank to indemnify Miller & Sayers in the matter of Hannon's appeal. The testimony by deposition of Culver, vice president of the Wrought Iron Range Co., was the same. The witness testified also: "It was not my intention nor the intention of any other official

of the Wrought Iron Range Company either at the time the original bond was arranged or at the time the two cash indemnities were sent to Miller & Sayers, nor has it been our intention at any time since then to ever pay the fine and costs assessed against Hannon except as a last resort and after all legal remedies had been exhausted and we had been compelled to do so by the court of final jurisdiction. J. W. Hannon never at any time had the slightest property in or claim to a single dollar of the cash indemnities hereinbefore referred to. The only object or purpose of the Wrought Iron Range Company in making the bond referred to was to enable it to obtain a decision from the highest courts of Texas to the effect that the law under which Hannon was prosecuted was illegal and unconstitutional and that it was not unlawful to sell ranges in the manner and under the circumstances such as were shown to exist in the Hannon case. If, as I have been informed, Hannon was convicted in the County Court of Gonzales on August 28, 1902, he was not at that time in the employ of the Wrought Iron Range Company, his connection as an employe of said company having terminated on June 14, 1902. J. W. Hannon left absolutely nothing on deposit either with the Wrought Iron Range Company or the Boatmen's Bank, nor has he secured said company in any other manner for making the original bond or for the $1,696.92 in cash indemnities sent to Miller & Sayers. The purpose for which said bond was made is fully set forth in my answer to the 9th inty. No money was ever placed with Miller & Sayers by the Wrought Iron Range Co., or by the Boatmen's Bank upon any authority received from said company, for the purpose of paying the fine assessed against J. W. Hannon in the County Court of Gonzales County, Texas. The Wrought Iron Company has never sent any money to Miller & Sayers or authorized the Boatmen's Bank to send them any money to be used for the use and benefit of J. W. Hannon. All money sent to Miller & Sayers by our authority or instructions was sent as an indemnity to protect Miller & Sayers in case action should be brought against Hannon's sureties on his recognizance bond, and they should be compelled to pay any judgment that might be had against them on account of same."

The testimony of J. D. Sayers, F. T. Neal and W. L. Culver was that these remittances were for the purpose of securing or indemnifying Miller & Sayers in the matter of Hannon's appeal and that none of it was the money of Hannon and this was undisputed except for certain expressions in said letters, which will be referred to further on in this opinion.

The verdict was for plaintiff in garnishment, and upon this judgment was rendered against Miller & Sayers for the $696.92 with interest.

By assignment of error Miller & Sayers contend that upon the testimony no judgment was proper except one in their favor, with which contention we agree.

The garnishees answered in the terms of the statute negativing any liability. This answer was controverted by plaintiff by allegation in substance that on May 11, 1903, there was deposited with the firm of Miller & Sayers the sum of $800 for the use and benefit of J. W. Han-

non, and for the purpose of paying off the judgment in said case of the State of Texas v. J. W. Hannon. . . . "Affiant further says that he is informed that said money was so deposited with said Miller & Sayers by the Wrought Iron Range Co. through a bank in the State of Missouri. Affiant further says that said money was still at the date of the service of the writ of garnishment in this case." The burden of proof was on the state to show a relation between Hannon and Miller & Sayers authorizing the latter to be held as garnishees.

The principle relied on in support of the judgment is stated by appellee as follows: "Where a principal sends money to his agent with instructions to turn the money over to a third party, or for the benefit of a third party, the agent thereby becomes the debtor of the third party and the third party may sue and recover of said agent and need not prove anything but that the money was turned over to the agent for the benefit of plaintiff." There is absolutely no testimony in this case to call into exercise this well settled principle of law. There is not one word of testimony that the money sent Miller & Sayers was to be paid over to Hannon, or held for Hannon.

If the money was to be applied in settlement of the judgment, it was to be paid to the state and not to Hannon, in which event the state might have sued Miller & Sayers for the money upon the theory embodied in said proposition of law, but it would not make them liable in garnishment upon the theory that they were debtors, or had moneys of Hannon.

The facts upon which appellee bases its contention are found in Miller & Sayers' letter of April 18, to the Boatmen's Bank, in which they say: "You will therefore please confer with them and direct that draft be forwarded immediately to Harwood & Walsh who represented J. W. Hannon in the trial court and on appeal, to cover the amount of the judgment, interest and costs in order that a forfeiture may be prevented." And in reply thereto of April 20, by which a draft was enclosed and which concluded in the following words: "Herewith I return said statement together with our check for the amount of $696.92. Please apply same in settlement of this claim and return the account to us receipted."

The check was not sent to Harwood & Walsh but to Miller & Sayers, who did not pay off the judgment with it, but deposited it with themselves to the credit of the Boatmen's Bank, in other words, held it.

The garnishment was not served on Miller & Sayers until August 1. Before that time it is manifest from the later correspondence and events, that the Boatmen's Bank and the Wrought Iron Range Co., for which the former was acting throughout in this matter, had clearly fixed the purpose and destination of the money and did not intend it to be used to pay off the judgment. In fact at the date of the garnishment and for a long time before if Miller & Sayers had so applied the money, it would have been contrary to the desire and instructions of the party who had caused it to be sent.

But as already stated, if the directions given in the letter of April 20 had not been thus defined or changed, the fund could not have been reached by garnishment, and it can not be subjected in the case

by such a writ unless there be testimony from which the jury was authorized to find that the money sent was the property of Hannon. It may be if the case stood entirely· on the letter of April 20, that it might have implied and a jury might have been authorized to find that such was the fact.  But it would be merely presumptive evidence of such fact, if any, and as the record is in the case the jury could not have found such fact in the face of the undisputed testimony, that he had no interest whatever in the money.

The case as it appears to us has been fully developed and as the views we have expressed lead us to the conclusion that no judgment would be upheld on the testimony adduced except one for defendant, the judgment of the trial court will be reversed and judgment rendered here in favor of the garnishees, without reference to the other assignments of error.

*Reversed and rendered.*